BILLIE WRIGHT, BY HIS NEXT FRIEND, J. M. WRIGHT, v. J. BEATTY WRIGHT.

(Filed 24 November, 1948.)

**1. Automobiles § 24d—**

Where an invitee of the driver is riding in the automobile with the knowledge and consent of the owner, the owner is liable on the principle of *respondeat superior* for injury to the invitee proximately caused by the negligence of the driver.

**2. Automobiles § 24½c—**

Testimony that a taxicab driver had his minor son in the cab with him and that the employer owner saw the son in the car and knew the driver was about to make a business trip, is sufficient to take the question to the jury as to whether the employer owner acquiesced in the child's riding as a nonpaying passenger.

**3. Automobiles § 19—**

The duty which the owner owes to an invitee or guest is that of ordinary care.

**4. Parent and Child § 3b—**

The rule that a minor child may not recover against his father for negligent injury does not preclude the child from recovering from the father's employer on the principle of *respondeat superior* for negligence committed by the father as employee, and *a fortiori* the employer comes under the rule when the negligence arises out of a breach of special duties and obligations to the public existing by reason of the business in which he is engaged.

**5. Automobiles § 24a: Principal and Agent § 10—**

The owner of a taxicab is under duty of observing due care in its operation of which duty he cannot divest himself by employing another to operate the automobile in the prosecution of his business, and the owner will be held liable for the negligence of the driver in such instance under the principle of *qui facit per alium, facit per se.*

**6. Parent and Child § 3b—**

Recovery by an infant on the principle of *respondeat superior* against his father's employer for injury resulting from the father's negligence does not permit recovery by the minor against his father indirectly, since any action brought by the employer against the father would not be upon the principle of subrogation to the minor's right but for breach of the agency contract by the father in not observing the requisite standard of faithfulness owed the employer.

PLAINTIFF's appeal from *Nettles, J.,* March-April Term, 1948, CLEVELAND Superior Court.

*Horace Kennedy for plaintiff, appellant.*
*D. Z. Newton for defendant, appellee.*

SEAWELL, J.  Plaintiff, a six-year-old boy, sues by his next friend to recover damages for a personal injury sustained by reason of the negligence of the driver of a motor vehicle owned by the defendant, and at the time used in the business of transporting passengers by taxicab.  The operator of the taxicab, employee of defendant, was the child's father.  The father is not joined as a party to the action.

The child was not a paid passenger.  The complaint describes him as an invitee, with the knowledge and consent of the defendant owner.

Denials in the answer raised issues as to defendant's liability and the plaintiff proceeded with evidence.  The defendant offered none.

The appeal is from a judgment of nonsuit on defendant's demurrer at the conclusion of plaintiff's evidence.  This evidence consisted entirely of the testimony of the father, driver of the taxicab, with photographs and exhibits relating to the injury.

The witness testified that he had been driving for the defendant, who owned a fleet of cabs, eight or ten months, operating from a taxicab stand in Shelby.  He explained that the child's mother worked at night in a textile plant, and he had been carrying the child with him on numerous occasions, at times when he went in to check up with defendant, and that the boy was with him in the car on the night of the injury.

On the issue of negligence the evidence, *inter alia,* tends to show that the taxicab was not equipped with adequate brakes, and that the brakes did not respond at all to the attempted application, causing the car to go

out of control and into collision with the curb and a telephone pole, caus-
ing the injury. The driver, at the time, had been following a truck which
he attempted to pass, and was endeavoring to avoid an automobile coming
from the opposite direction. The evidence was legally sufficient to be
submitted to the jury on the question of negligence; and the injury to
the child, as disclosed by the evidence, was of a serious and permanent
nature.

The evidence critically bearing on the status of the plaintiff as invitee
we quote verbatim:

> "On May 17, 1947, at night, my little son Billie was in the car
> with me. That was not the first time he had been with me. I had
> before this had him in my cab and driven him with the knowledge of
> J. Beatty Wright, but I cannot say as to the exact number of occa-
> sions I had done this, but he was with me several times when I went
> to check up with Mr. Beatty Wright, and Mr. Wright saw my son
> in the car with me. On May 15th, Mr. Beatty Wright came by the
> service station, and we were sitting around the station and I asked
> what time was it and he said five past twelve, and I said I had a trip
> to the American Grill to get some people and bring them back to
> town; it was to Fred Hoppes' place I was going to carry them to, and
> he said, "I am going in and go to bed, . . ."

and on cross-examination:

> "I certainly had an accident that night of May 15; the policemen
> have the dates, and I swear that it was on the night of May 15, and
> I was working for Mr. Wright at that time, and it was on Monday
> night; and my child did not pay to ride in the cab and I had him
> with me because my wife was working on the third shift and I was
> over in Shelby and I had a trip to Kings Mountain and I wanted my
> child to spend the night with me. Mr. Beatty Wright had never told
> me that I could carry my child in the cab, and had not told me not to
> pick up anyone but a paid passenger; he never had told me that he
> wanted pay for my child riding in the cab with me, but I do know
> that he saw the child in the cab with me that night, for my child was
> in the seat, leaning over against me."

Our inquiry is narrowed to the question whether there was, in this,
evidence in behalf of the plaintiff sufficient to engender an inference that
he was, at the time of the injury, an invitee, with the knowledge and con-
sent of the defendant owner; and whether, although in fact such invitee,
he is in position, as son of the negligent operator of the car, to invoke
the law against the defendant on the principle of agency and *respondeat*

WRIGHT *v.* WRIGHT.

*superior;* or to put it conversely—whether the defendant to whom the negligence of the employee is imputed as a matter of public policy, or as an agent through whom the employee was acting, may avail himself of the immunity from suit extended to the father as a defense against his own liability.

1. It does not require the express permission of the owner to constitute a passenger an invitee, or guest, nor does it require express authority, either general or specific, given the driver in charge of a taxicab to carry a nonpaying passenger as such invitee or guest. Knowledge and consent are ordinarily held sufficient to raise the inference. The owner acquiesces in a situation which he does not seek to avoid when the opportunity is afforded.

"The owner need not have expressly invited the passenger to ride in the automobile so long as he knew of and acquiesced in the passenger's presence." Schwartz, Trial of Automobile Cases, sec. 373, p. 490. "Where the passenger is riding in the machine with the knowledge and consent of the owner, and he is injured through the driver's negligence and without fault on his own part, he may recover from the owner." *Ibid.,* sec. 388.

Our own decisions are in accord. In *Russell v. Cutshall,* 223 N. C. 353, 26 S. E. (2) 866, after stating the rule that the owner is not liable for negligent injury to a mere invitee of the driver, we find it stated : "The particular nature of the employment, or the circumstances existing at the time, or *acquiescence on the part of the employer* may create an exception to the general rule," citing *Fry v. Utilities Co.,* 183 N. C. 281, 111 S. E. 354; *Hayes v. Creamery,* 195 N. C. 113, 141 S. E. 340. We underscore the part of the opinion pertinent to the facts under review here. Whether it be an exception to a general rule, or expressed as an independent rule, where the invitee is riding with the knowledge and consent of the owner the latter is liable, on the principle *respondeat superior* for injury proximately caused by the negligence of the driver. *Fry v. Utilities Co., supra; Hayes v. Creamery, supra.*

Counsel for the plaintiff point out that the evidence tends to show that the driver, in going in to "check up" personally with the defendant, had the boy with him in the car, and that on the night of the injury he was in the car and that defendant saw him leaning over against him ; and knew he was about to make a business trip.

We are not prepared to say that the evidence was insufficient to make consent and acquiescence a jury matter.

The measure of the duty which the owner owes an invitee or guest is that of ordinary care. *Fry v. Utilities Co., supra; Hayes v. Creamery, supra;* 5 Am. Jur., Automobiles, sec. 230, citations under n. 9.

2. The appellee argues that the plaintiff is barred from maintaining the suit because the negligence which proximately caused the injury was

that of the father, against whom no action can be maintained; and cites in support of that position *Small v. Morrison,* 185 N. C. 577, 118 S. E. 12.

Since *Small v. Morrison* presents an entirely different situation from that obtaining in the case under review—there the father was joined in the action,—we must assume that appellee is arguing for extension of the doctrine which precludes the child from suing the father for tort so as to cover all actions attempted to be brought by the child against other parties for the reason that the action arose out of the negligence of the father. This defense, unsuccessfully interposed in *Dunlap v. Dunlap,* 150 A. 905, 71 A. L. R. 1055, is there formulated by the proponent: "No recovery can be had for damages resulting from an injury to a defendant (*sic*) minor, caused by the father's negligence." (The injured party was plaintiff.)

In *Small v. Morrison* the question of agency and *respondeat superior* with which we now deal was not involved. The master-servant relation was absent, the father acting independently, and not in a dual capacity. In that case the minor plaintiff sued the father and an insurance company in which the latter held an indemnity policy which required as a condition precedent to recovery that a judgment should first be obtained against the insured and execution issued thereon. The suit failed because such judgment against the father could not be obtained. *Chief Justice Stacy,* writing the opinion for the Court, laid down the rule that an unemancipated minor child living as a member of the family may not maintain an action against the father for tort (including negligent injury). That is the law in this jurisdiction; but it is not the question now before us; and the conclusion we have reached does not bring us into disagreement or disharmony with that holding, or in conflict with the precedent.

The great weight of authority is against the position taken by the appellee. *Schubert v. Schubert Wagon Co.,* 249 N. Y. 253, 164 N. E. 42, 64 A. L. R. 293; *Poulin v. Graham,* 102 Vt. 307, 147 A. 698; *LeSage v. LeSage,* 224 Wis. 57, 271 N. W. 369; *Hensel v. Hensel Yellow Cab,* 209 Wis. 489, 245 N. W. 159; *McLaurin v. McLaurin Furniture Co.,* 166 Miss. 180, 146 So. 877; *Chase v. New Haven Waste Material Corp.,* 111 Conn. 377, 150 A. 107, 68 A. L. R. 1497; *Dunlap v. Dunlap, supra; Mi-Lady Cleaners v. McDaniel,* 235 Ala. 469, 179 So. 908, 116 A. L. R. 639; Anno. 68 A. L. R. 1500; 39 Am. Jur., Parent and Child, sec. 91; Prosser on Torts, 909; Restatement, Agency, sec. 217. Some of the cited cases deal with suits brought by the wife against the employer of the husband; many of them deal with suits brought by minor children against the employer of the father; but no matter on what domestic relation the immunity from action is predicated, or on what identical or differing philosophy it is based, the decisive principle is idenical: The personal immunity from suit because of the domestic relation does not extend to the employer

so as to cancel his liability or defeat recovery on the principle *respondeat superior* when the injury was inflicted by the servant acting as such.

While the cited cases do not confine the principle to instances in which, because of the nature of the business, a special duty of the employer is involved, and we do not intend so to confine it, it is proper to point out that in the instant case the defendant was engaged in a business of service to the public in which such special duties were involved and *a fortiori* should come under the rule. We quote from 35 Am. Jur., p. 980, sec. 549, which we think presents the universal rule:

> "It is well-settled law that an employer who, by reason of his calling or the business in which he is engaged, owes special legal duties and obligations to the public or to those with whom there exists some contractual relation cannot shirk or evade such special duties and obligations by committing its performance to another; he is bound absolutely to perform the obligation, and he is liable for a failure to do so in any respect whereby injury results to others, whether such failure results from negligence or from the wilful, wanton, or criminal conduct of the employee or agent to whom the duty has been committed. Being bound to do the act or perform the duty, if he does it by another the employer is treated as having done it himself."

In this instance the employer, in prosecution of the business in which he was engaged, committed to his agent, the driver of the taxicab, not only the function of mechanical transportation but the duty of observing due care, which was primarily his own and of which he could not divest himself, although, under the necessity of the business, he exercised it through another.

The law which puts the master's hand on the steering wheel does not find its sole support in a fictional device by which public policy is created and adjusted to a felt need of society and expressed in juristic forms; it is grounded more securely on the doctrine of agency,—the principle applied in countless instances since that doctrine was first developed,— the fundamental principle, the "alter ego," and, in this instance, the constructive presence of the principal; *"Qui facit per alium, facit per se,"* which in *Schubert v. Schubert Wagon Co., supra, Justice Cardozo,* speaking to this branch of the subject, freely but pungently translates into the maxim, "He who acts through another *acts by himself."*

The suggestion that suit against the master might by indirection accomplish that to which the rule denies direct action, should the master sue his negligent employee, is answered in *Schubert v. Schubert Wagon Co., supra,* from which we have quoted so copiously, where it is observed that any action brought against the employee would not be on the principle of subrogation, that is by virtue of the minor's right, but for breach of the

McILROY *v*. MOTOR LINES.

agency contract and not observing the requisite standard of faithfulness "in respect to the duty" owed to the master.

The precise point is one of first impression here, but far from new in the great network of jurisdictions with which we work in common to achieve a better balanced and more perfect jurisprudence. Text writers and authorities which we are accustomed to consult and which review the entire field of decided cases are uniform in presenting the rule as we conceive it to be. 35 Am. Jur., Master and Servant, sec. 543, p. 974; 39 Am. Jur., Parent and Child, sec. 91, p. 737; Prosser on Torts, Hornbook Ed., sec. 99, p. 909; Restatement, Agency, sec. 217 (b); see also, Restatement, Vol. 2, sec. 489, Families of Servants.

Adopting what we believe the better reasoned view, and the one more consonant with sound public policy, we conclude that the Superior Court was in error in nonsuiting plaintiff's case, and the judgment to that effect is reversed to the end that there may be a trial upon the merits.

Reversed.