G.L., PLAINTIFF, v. M.L., DEFENDANT.

Superior Court of New Jersey
Chancery Division Bergen County
Family Part

Decided September 20, 1988.

*Stanley Fishman* (*Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Franklin*, attorneys) for plaintiff.

*Philip Vinick*, (*Cohn & Lifland*, attorneys) and *Donald Greer* (*Monte & Marriot*, attorneys) for defendant.

KRAFTE, J.S.C.

Do sexual relations between spouses constitute "marital or nuptial privileges" under *Merenoff v. Merenoff*, 76 *N.J.* 535 (1978), thereby entitling any sexual tort committed by one spouse upon the other to interspousal immunity? This court finds that they do not.

The plaintiff in this matter filed for divorce on November 2, 1984. Included in her complaint were four separate counts for personal injury alleging that her husband, the defendant, transmitted genital herpes to her during their marriage. The defendant's insurance carrier, defending against the negligence claim and the defendant's attorney in the matrimonial proceeding defending against the intentional tort claim now join together in bringing a motion for summary judgement dismissing the personal injury counts.

Our highest court examined and incorporated the history and nature of interspousal immunity in *Merenoff v. Merenoff*, 76 *N.J.* at 539–547 and abrogated the doctrine regarding tortious conduct stating, "... where personal injuries are tortiously inflicted by one spouse upon another, it is just and fair that compensation in appropriate circumstances be afforded the wronged and injured party and, to this end, a suit be allowed to effectuate such recovery." *Id.* at 557. The *Merenoff* court recognized that there was a range of activity in a marital relationship, characterized as "special matters of privacy and familiarity" beyond the reach of the law of torts because they "fall outside the bounds of a definable and enforceable duty of care" and are encompased by a marital or nuptial privilege. *Id.* at 557. These areas were not left intact, however, were seen as potential exceptions to the otherwise abrogated doctrine and were to be ultimately defined and developed on a case-by-case basis by future courts. *Id.* at 557.

*Tevis v. Tevis*, 79 *N.J.* 422 (1979) and *Merenoff* discuss the effect of interspousal immunity in tort actions. Both opinions addressed negligence and intentional tort actions between spouses. The archaic doctrine was abolished with an allowance for future consideration regarding marital conduct "... involving marital or nuptial privileges, consensual acts and simple common domestic negligence." *Tevis*, 79 *N.J.* at 426. There have been no subsequent decisions in this state which define or explore such immunity.

The Supreme Court of Missouri was confronted with a negligence suit based on the plaintiff-wife's allegation that during the course of their marriage, defendant had infected her with the herpes virus. The Court, *en banc*, allowed the suit, and in part, looked to our own Court's decision in *Merenoff*, as support. In *S.A.V. v. K.G.V.*, 708 *S.W.*2d 651 (Mo.Sup.Ct. en banc 1986), the justices were concerned with the duty of care required between married persons and found that it was not beyond the ability of the courts to assess, define or adjust that standard of care. *S.A.V. v. K.G.V.*, 708 *S.W.*2d at 653. The court in *R.A.P. v. B.J.P.*, 428 *N.W.*2d 103 (Minn.Ct.App., 1988) held that a person infected with genital herpes has a legal duty to use reasonable care to avoid transmission. The divorcing husband's negligence and fraudulent transmission claims against his wife were upheld as valid causes of action.

In the present action, the plaintiff alleges that the defendant continued to have sexual relations with her even after discovering that he had herpes, the result of an extramarital relationship. It is argued by the defendant that sexual intercourse between spouses is by its very nature an act which falls within the scope of a marital or nuptial privilege and therefore his conduct should be shielded from liability. This Court does not agree. It is unconscionable that a person could escape liability for infecting a spouse with genital herpes or other sexually transmitted disease by merely claiming that the transmission occurred during privileged sexual relations of marriage. As early as *Crowell v. Crowell*, 180 N.C. 516, 105 *S.E.* 206 (Sup.Ct. 1920), reh. den. 181 *N.C.* 66, 106 *S.E.* 149 (Sup.Ct.1921), courts began to recognize a cause of action in tort for the transmission of veneral disease to one's spouse.

Defendant misconstrues the meaning of marital privilege and furthermore destroyed any that may have existed by his own intentional involvement in an extramarital relationship. Defendant cannot simultaneously breach his marital relationship by engaging in extramarital intercourse, and claim nuptial immunity for consequences flowing from his own wilful and

intentional conduct. It is a "... sound principle of law, and certainly approved in morals, although a man may have a legal right to do a given thing, yet he forfeits that right when he voluntarily and deliberately places himself in a position where it becomes impossible for him to exercise it without hurt or injury to another." *Crowell v. Crowell,* 106 *S.E.* at 149–150. Contagion of sexually transmitted diseases was clearly not contemplated by the *Merenoff* Court to be barred from personal injury suits through the use of interspousal immunity. Moreover, the Court was concerned with judicial neutrality toward married persons and did not intend to create a shield for one spouse as against the other. "And the right to bring a lawsuit for compensation for wrongful injury is an option or choice that ought not be denied a person solely because of marriage." *Merenoff,* 76 *N.J.* at 557.

■ As to the intentional aspect of the personal injury claim, it is clear that the abolition of the interspousal immunity doctrine pertains to intentional tortious conduct as well as conventional negligence. *Tevis v. Tevis,* 79 *N.J.* 422, 426 (1979). Plaintiff first observed symptoms of the herpes simplex virus on defendant's body in February 1983, but accepted his explanations to the contrary. Defendant argued that he never intended to inflict the plaintiff with herpes as he was never officially diagnosed until 1987, almost three years after the filing of the complaint. However defendant admitted in his deposition that he told plaintiff of his extramarital affair prior to the couple's separation. It was also stated by the parties' former housekeeper that defendant told plaintiff that he had contracted herpes as a result of this affair and was sorry to have infected her. Defendant has since denied this conversation. Regardless, the intentional act was not that of knowingly transmitting herpes to plaintiff but, rather, it was the act of sexual intercourse with the plaintiff after sexual relations with someone else with whom he carried on a two year relationship. Such behavior on defendant's part placed plaintiff at risk of physical harm.

There remains a duty of care to one's spouse and the threat of physical harm cannot be excused. "Consent to sexual intercourse vitiated by one partner's fraudulent concealment of the risk of infection with venereal disease is equally applicable today, whether or not partners involved are married to each other." *Kathleen K. v. Robert B.*, 150 *Cal.App.*3d 992, 198 *Cal.Rptr.* 273, 277 (Ct.App.1984). The Supreme Court of New York has also indicated its willingness to consider a personal injury action for the transmission of genital herpes between spouses. See *Maharam v. Maharam*, 510 *N.Y.S.*2d 104, 123 *A.D.*2d 165 (App.Div.1986). While allowing that interspousal immunity may exist as a narrow exception in some areas, the Court was very clear that it ".. should not be viewed as a catalyst which renders wrongful acts innocuous." *Tevis*, 79 *N.J.* at 429, citing *Mereonoff v. Merenoff*, and *Long v. Landy*, 35 *N.J.* 44 (1961). Indeed, at one time, states considered the transmission of syphillis by husband to wife a criminal assault. See *State v. Lankford*, 29 *Del.* 1594, 102 *A.* 63, 64 (Ct.Gen.Sess. 1917). Although a criminal charge is not being addressed, the defendant can not be allowed to hide behind the veil of marital privilege.

Decisions within our own state and those in other parts of the nation provide no justification to bar this suit on the basis of interspousal immunity. Elsewhere, litigants have argued lack of any liability because both parties were unmarried and such efforts were found lacking in merit. For example, the Court in *B.N. v. K.K.*, 312 *Md.* 135, 152, 538 *A.*2d 1175, 1184 (Ct.App. 1988) stated that it was "not about to decide that *only* a marital relationship would impose a duty to disclose a contagious disease transmitted by sexual relations." (Emphasis added.)

■ This Court holds that the marital privilege of sexual relations does not include immunity to personal injury suits between spouses based upon the transmittal of a sexual disease. Motion for summary judgement is denied as to all counts

of the personal injury claim. Plaintiff will submit an appropriate order.