PAUL W. CRUTCHFIELD v. THE RICHMOND & DANVILLE RAIL-ROAD COMPANY.

*Negligence — Liability of Master — Judge's Charge.*

1. A master is liable for an injury to a servant resulting from the negligence of a fellow servant if the master contributes to the negligence.

2. It is the duty of a servant to notify his master when anything is out of order in his peculiar department and if he neglects to do so and continues in his employment and is injured, he cannot recover damages of the master.

3. A Judge should not state to the jury his estimate of a witness or how he appears to him. *Therefore*, when a witness was introduced for the purpose of impeaching a former witness and the Judge told the jury that the former was " a man of high character in his profession and appears to be a man of culture " and said nothing concerning the latter; *Held* to be error.

*Hardy* v. *C. C Railway Co.* 74 N. C. 734, and same case *ante* 5, cited and approved.)

CIVIL ACTION, tried at Fall Term, 1876, of FORSYTHE Superior Court before *Kerr, J.*

The plaintiff was a brakesman on that portion of defendant's road known as the North Western N. C. Rail Road, and while in the discharge of his duty as such was badly and permanently crippled by a defective engine and road bed of defendant company. This action was brought to recover damages for the injuries so received.

CRUTCHFIELD *v.* R. & D. R R. Co.

The evidence was that the engine was defective and one witness testified "that while engaged on the road as fireman he had seen the engine 'walk off when no one was about it, and when the steam was shut off;' that the road bed was in bad order at the place where the accident happened and that while plaintiff was engaged in coupling cars the train made a sudden rush backward, cutting and crushing the elbow of plaintiff."

The defendant insisted that plaintiff contributed to this injury by his own negligence and introduced Jacob Hicks who testified "that he was engineer on the train when plaintiff was injured, that the engine attached to the train was a good one, and that he could control it and did control it prior to and at the time of the injury to plaintiff."

Dr. Bahnsen, who had previously been examined as an expert, as to the extent, &c. of the injuries received by plaintiff, was recalled and testified in substance, that the night after the accident, he was returning from attendance on plaintiff and passed the depot in Greensboro, where he met the witness Hicks. He inquired of Hicks the cause of the injury. Hicks replied "that the engine was old and worn out, and that he could not stop it within several feet of the place he wanted to and at the time of the accident he felt the engine jerk backward." '

There was other conflicting testimony, the statement of which is not necessary to an understanding of the opinion. His Honor submitted issues to the jury who found as follows ;

1. The injury to plaintiff was caused by the negligence of defendant.

2. Plaintiff was not guilty of contributory negligence.

3. The injury was not caused by the negligence of any employee of defendant.

4. That plaintiff is entitled to $4.000 damages. Verdict for plaintiff. Judgment. Appeal by defendant.

---
CRUTCHFIELD *v.* R. & D. R. R. Co.

---

*Messrs. T. J. Wilson* and *Watson & Glenn,* for plaintiff, cited *State* v. *Davis,* 4 Dev. 612; *State* v. *Miller,* 1 D. & B. 503; *State* v. *Harris,* 1 Jones, 190; *Ill. R. R.* v. *Read,* 37 Ill. 484; *Rail Road* v. *Pratt,* 22 Wallace, 134.

*Mr. J. M. McCorkle,* for defendant.

READE, J.   1st. An *accident* is " an event from an unknown cause," or ' an unusual and unexpected event from a known cause," "chance, casualty."   As if a railroad bed be in good order and the engine and cars be in good order, and the engineer and other attendants be skilful and careful ; and yet a rail breaks, the train is crushed and the employees and passengers are killed ; that is an unusual and unexpected event from a known cause, an *accident.*

But if the track be out of order and the engine worn and unmanageable and on account thereof there be the like result as above stated on the good road, that is not an unusual and unexpected event, but a usual and expected event from such a cause   It is not *accident* but it is *negligence.*

Suppose then it were true as contended for by the defendant, that the plaintiff either from the general nature of his employment on the defendant's road or by express contract, assumed the risk of all *accidents,* yet it would not follow that he would not be entitled to recover.   He would still be entitled to recover if his injury resulted not from *accident* but from the *negligence* of the defendant.

2nd. But suppose the plaintiff as an employee on the road knew that the road and the engine were out of order, could he recover?

It would seem that if an engineer whose peculiar duty it is to know the condition of the engine and to give notice of any fault in order that it may be repaired, runs the engine out of order without giving such notice and is injured, he is guilty of at least contributory negligence and could not recover.

So, if a brakeman, as the plaintiff was, knows that the brakes are out of order and does not communicate it in order that they may be repaired, and injury results to him therefrom, he would be guilty of at least contributory negligence and could not recover. This is so for two reasons : *First.* It is the duty of the employees to inform the employer when anything is out of order in their peculiar departments that it may be put right. *Second.* Because if it be not put right, then it is their privilege to leave the service.

3rd. But here the fault was not in the plaintiff's department of brakes so that he cannot be said to be directly guilty of contributory negligence in not disclosing it or in continuing in the service after he knew it. Yet, if the injury was from the negligence of his *fellow servant*, can he recover of the defendant?

The decisions both English and American go very far towards the conclusion that one servant cannot recover of the employer for any injury which results from the negligence of a fellow servant in a business common to both. There may be exceptions, but grant that to be so for the sake of the argument; yet it is not so where the employer contributes to the negligence of the fellow servant or to the injury; as if he employ an unfit servant or as in the case of a bad engine, knows that it is bad and fails to repair it. So in this case, if the defendant answers that the plaintiff cannot recover because the injury resulted from the negligence of his fellow servant, the engineer, the plaintiff may reply that the defendant contributed to the negligence of the engineer and to the injury by having a bad engine.

What we have said will be found to be well supported by Wharton's Law of Negligence in his chapter on "Master's Liability to Servants;" and by his references, some of which I have consulted. And also by Redfield on Railways, § 170, *et seq.*

See also *Hardy* v. *N. C. C. R. R. Co.* 74 N. C. 734. And the same case upon petition to rehear to be reported in 76 N. C. (See *ante* 5.)

4th. It being the principal matter in dispute, whether the engine was a good or a bad one, the defendant introduced the engineer, Hicks, who swore that it was a good one. And thereupon the plaintiff introduced Dr. Bahnsen, who swore that Hicks told him that the engine was a bad one.

His Honor in his charge to the jury said that it was not denied but that Dr. Bahnsen was a gentleman of unquestionably high character in his profession and that he appeared to be a gentleman of culture. And the defendant insists that thereby His Honor expressed an opinion upon the facts. To this the plaintiff replies that His Honor did not say that of Dr. Bahnsen, in reference to his contradiction of Hicks, but in reference to his testimony as an expert, as to the injury which the plaintiff had received; and that at any rate if he erred in praising Dr. Bahnsen and not praising Hicks the error was cured, by his telling the jury that the credibility of the witnesses was a question for them.

Suppose we put His Honor's charge in this form: ' Gentlemen of the jury; Hicks is an engineer by profession and he swears that the engine was a good one. Dr. Bahnsen is a physician by profession and he swears that Hicks told him that the engine was a bad one. Dr. Bahnsen is a man of high character in his profession and appears to be a man of culture; Hicks is not, in his profession, but you are the judges of their credibility." Would there be any doubt as to which witness His Honor thought the jury ought to believe ? Yet putting it in this form, only makes the contrast which was drawn between the two witnesses a little more striking. Nor does it matter if His Honor was, (if he was) speaking of another part of Dr. Bahnsen's testimony when he put his

estimate upon him as a physician of high character and a gentleman of culture. That was the mark put upon the *man* and it attached to every part of his testimony. A Judge ought not to state to the jury his estimate of a witness or how he appears to him.

In a late case before us two witnesses had sworn contrary and the Judge told the jury that both were gentlemen and it was only a matter of memory. And we had to give a new trial.

Error.

PER CURIAM.                                    *Venire de novo.*